```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
                                                                :
CBS BROADCASTING INC.,                                          :
                                                                :   Case No. 23-cv-7003
                                Plaintiff,                      :
                                                                :
            v.                                                  :   COMPLAINT
                                                                :
U.S. DEPARTMENT OF JUSTICE,                                     :
FEDERAL BUREAU OF PRISONS, and                                  :
FEDERAL BUREAU OF INVESTIGATION,                                :
                                                                :
                                Defendants.                     :
                                                                :
---------------------------------------------------------------x
```

Plaintiff CBS BROADCASTING INC., by and through its undersigned counsel, alleges as follows:

1. This is an action brought pursuant to the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), for the production of agency records relating to now-deceased FBI agent Robert Hanssen from Defendants U.S. Department of Justice, Federal Bureau of Prisons, and Federal Bureau of Investigation.

**PARTIES**

2. Plaintiff CBS Broadcasting Inc. ("CBS"), acting here on behalf of its non-juridical news division CBS News, is a corporation organized under the laws of New York with its principal place of business in New York, New York.

3. Defendant U.S. Department of Justice (the "DOJ") is a federal agency subject to FOIA.

4. Defendant Federal Bureau of Prisons (the "BOP") is a federal agency subject to FOIA.

5. Defendant Federal Bureau of Investigation (the "FBI") is a federal agency subject to FOIA (together with the DOJ and BOP, the "Defendants").

**JURISDICTION AND VENUE**

6. This case is brought pursuant to FOIA and presents a federal question conferring jurisdiction on this Court under 28 U.S.C. § 1331.

7. Venue is proper under 5 U.S.C. § 552(a)(4)(B) as CBS has its principal place of business in this District.

8. Pursuant to 5 U.S.C. § 552(a)(6)(C), CBS has exhausted all administrative remedies with respect to each request as Defendants failed to comply with the applicable statutory deadlines or other requirements imposed by them on FOIA.

**BACKGROUND**

9. From June 6, 2023 to June 22, 2023, CBS made seven FOIA requests for agency records relating to Robert Hanssen ("Hanssen").

10. As of this filing, Defendants have failed to make determinations as to six of these requests and have denied, in its entirety, the seventh.

11. Defendants' failure to respond and, in the case of the seventh request, to deny it in its entirety are without basis in FOIA.

**A.    Hanssen's Career at the FBI**

12. Hanssen was born on April 18, 1944, in Chicago, Illinois.

13. He received an AB degree in Chemistry from Knox College in Galesburg, Illinois, in 1966, and, in 1971, a Master of Business Administration from Northwestern University.

14. On January 12, 1976, Hanssen began his service with the FBI as a special agent.

15. After initial training, the FBI assigned Hanssen to its field office in Indianapolis, Indiana and, in 1978, reassigned Hanssen to the FBI's New York City field office.

16. In March 1979, the FBI detailed Hanssen to its intelligence division in its New York field office.

17. In 1981, the FBI detailed Hanssen to its headquarters in Washington, D.C. as a Supervisory Special Agent in its Intelligence Division.

18. In his role in the Intelligence Division's Budget Unit, Hanssen had access to classified information relating to FBI foreign counterintelligence.

19. Thereafter, from 1983 until 1985, the FBI assigned Hanssen to the Soviet Analytical Unit.

20. In this role, Hanssen had access to information about a particular highly compartmented classified U.S. government program.

21. Between 1985 and 1991, the FBI assigned and reassigned Hanssen between its headquarters in Washington, D.C. and its field office in New York City.

22. In July 1991, Hanssen returned to the Intelligence Division at FBI Headquarters where he served for six months as a program manager in the Soviet Operations Section—the unit tasked with countering Soviet efforts to obtain U.S. intelligence information.

23. In January 1992, the FBI promoted Hanssen to Chief of the National Security Threat List in the Intelligence Division (later known as the National Security Division "NSD"), where he focused on economic espionage.

24. In April 1994, the FBI temporarily assigned Hanssen to its Washington Field Office (then known as the Washington Metropolitan Field Office) before, in December 1994, reassigning Hanssen to FBI headquarters, where he worked in the Office of the Assistant Director for the NSD.

25. Hanssen's last assignment before the FBI initiated an investigation into his conduct was from February 1995 to January 2001 when he served as the senior FBI representative to the Office of Foreign Missions of the U.S. Department of State.

26. The FBI granted Hanssen a variety of security clearances, including a TOP SECRET security clearance.

27. Throughout his career, Hanssen signed nondisclosure agreements relating to compartmented and classified information.

**B.     Hanssen's Wrongdoing**

28. Hanssen's espionage against U.S. interests began in 1979 when he approached the Soviet Main Intelligence Directorate ("GRU") and offered to provide the GRU with information about the FBI's activities.

29. Hanssen eventually ceased providing the GRU information when confronted by his wife, Bonnie Hanssen.

30. Nevertheless, in October 1985, Hanssen again approached representatives of the Soviet Union.

31. That month, he sent a letter to KGB First Chief Directorate counterintelligence officer Victor Cherkashin, offering sensitive U.S. government documents in exchange for $100,000 USD.

32. In that letter, Hanssen named three Soviet KGB officers whom the United States had recruited as double agents.

33. As a result of Hanssen's disclosure, two officers were executed and the third imprisoned.

34. Days later, Hanssen provided the KGB with a package containing numerous classified documents from the U.S. intelligence community.

35. Thereafter, on November 2, 1985, the KGB left $50,000 USD at the drop site Hanssen had proposed in his earlier communication.

36. For the next 16 years, until 2001, Hanssen, who the FBI characterized as "the most damaging spy in Bureau history," continued to feed U.S. secrets to the Soviet Union and, later, the Russian Federation.

37. The FBI cataloged Hanssen's years of espionage in a probable cause affidavit filed in February 2001, which is available at https://www.fbi.gov/file-repository/hanssen-affidavit.pdf/view and which CBS incorporates it here by reference.

38. Among other things, Hanssen disclosed hundreds of pages of classified documents, including information about U.S. nuclear programs, counterintelligence information, and financial plans; more than two dozen diskettes containing national security information; and the names of U.S. spies and Soviet defectors.

39. In return, the Soviet Union and, later, the Russian Federation compensated Hanssen in multiple payments comprising more than a million dollars in cash and diamonds stretching across nearly two decades.

40. They also issued commendations to their officers involved in managing Hanssen's espionage.

41. In 1989, for example, the KGB presented some of these officers with the Order of the Red Banner, the Order of the Red Star, and the Medal for Excellent Service.

C.  **Hanssen's Arrest and the Fallout**

42. According to the FBI, "overwhelming evidence" pointed to Hanssen as the agent working with the Soviet Union and Russian Federation.

43. At one point, KGB officer Aleksandr Shcherbakov provided the FBI with the Russian Federation's file on Hanssen.

44. The FBI paid Shcherbakov $7 million USD for the information.

45. This information assisted the FBI in identifying Hanssen.

46. For example, among the information was a recording of a conversation between Hanssen and Aleksandr Fefelov, a KGB officer.

47. FBI agent Michael Waguespack was eventually able to identify Hanssen's voice after listening to that recording.

48. As a result, in late 2000 and early 2001, the FBI reassigned Hanssen to a new position in the Information Resources Division at FBI headquarters to make it easier to monitor his daily activities without Hanssen becoming suspicious.

49. Then, in early 2001, the FBI executed multiple searches of Hanssen's professional office and on his Ford Taurus, which resulted in the discovery of incriminating evidence, including Hanssen's communications with the Soviet Union and Russian Federation.

50. After securing an arrest warrant and after Hanssen's years of exploits, on February 18, 2001, the FBI arrested Hanssen near one of his dead drop sites, a park in Vienna, Virginia.

51. In a press release issued by the FBI on February 21, 2001, which CBS incorporates by reference here, FBI Director Louis J. Freeh said that the charges against Hanssen, if proven, were "the most serious violations of law—and threat to national security."

52. Director Freeh added, "A betrayal of trust by an FBI Agent, who is not only sworn to enforce the law but specifically to help protect our nation's security, is particularly abhorrent. This kind of criminal conduct represents the most traitorous action imaginable against a country governed by the Rule of Law."

53. After Hanssen's arrest, the FBI was criticized for failing to identify Hanssen earlier, with one American newspaper observing, "Though the bureau was aware that sensitive

American secrets were being compromised, it did not adequately explore the possibility that the betrayal had come from within its own ranks."

54. The FBI failed to do so despite conducting multiple investigations into compromised U.S. government operations.

55. At least one of those investigations, specifically a March 1993 report by the CIA's Special Investigations Unit, raised the possibility of KGB penetration of the FBI.

56. Later, a March 2002 DOJ report titled *A Review of FBI Security Programs* and prepared by the Commission for the Review of FBI Security Program*s*, identified "significant deficiencies in [FBI] policy and practice," which flowed "from a pervasive inattention to security, which has been at best a low priority."

57. That report is available at https://irp.fas.org/agency/doj/fbi/websterreport.html, and CBS incorporates it by reference here.

58. Similarly, DOJ's Office of Inspector General issued an August 2003 report titled *A Review of the FBI's Performance in Deterring, Detecting, and Investigating the Espionage Activities of Robert Philip Hanssen*, which found that Hanssen's case "highlighted significant, longstanding deficiencies in the FBI's internal security program, many of which were brought to the attention of FBI management over the years but were not corrected."

59. An unclassified executive summary of that report is available at https://oig.justice.gov/sites/default/files/archive/special/0308/index.htm, and CBS incorporates it by reference here.

60. For months after the arrest, news organizations closely followed the fallout from the Hanssen case, publishing reports about Hanssen maintaining an active Swiss bank account,

the disclosure of surveillance at the Soviet embassy, the arrest of a KGB agent, and other revelations from Hanssen's espionage.

61. In March 2001, the U.S. government retaliated against the Russian Federation, ordering the expulsion of Russian diplomats from the United States, which caused Russia to expel four U.S. diplomats in retaliation.

62. The same month, the FBI instituted a new policy of giving polygraph tests to hundreds of employees with access to sensitive and classified information.

63. In May 2001, a federal grand jury indicted Hanssen on 21 counts, including 19 counts of espionage, to which Hanssen pleaded not guilty.

64. But in June 2001, Hanssen agreed to plead guilty to 15 counts of espionage in exchange for the U.S. government agreeing not to pursue the death penalty against him.

65. That plea agreement is available at https://www.justice.gov/sites/default/files/nsd/legacy/2014/07/23/HANSSEN%2C%20Robert%20plea%20agreement%2007-06-2001.pdf, and CBS incorporates it by reference here.

66. The agreement was conditioned, among other things, on Hanssen agreeing to participate in significant debriefings relating to his espionage with the FBI.

67. Additionally, Hanssen agreed to forfeit the monies he received from the Soviet Union and later the Russian Federation.

68. Under the agreement, Hanssen's wife, Bonnie, was permitted to receive the equivalent of a survivor's annuity so long as she continued her cooperation with the U.S. government. Bonnie was also permitted to keep the family home as well as three family vehicles.

69. As a result of the plea agreement, Hanssen stipulated to the United States' statement of facts, which is available at https://www.justice.gov/sites/default/files/nsd/legacy/

2014/07/23/HANSSEN%2C%20Robert%20statement%20of%20facts%2007-03-2001.pdf     and which CBS incorporates by reference here.

70. In July 2001, Hanssen officially pleaded guilty, and in May 2002, a federal judge sentenced Hanssen to life in prison without the possibility of parole.

**D.     Hanssen's Confinement**

71. After sentencing, Hanssen was remanded to the custody of BOP and transported to the United States Penitentiary, Administrative Maximum Facility (USP Florence ADMAX), also known as ADX Florence or, simply, Supermax, near Florence, Colorado.

72. In 2007, in a 60 MINUTES report titled *A Clean Version of Hell*, former warden Robert Hood told CBS, "I don't know what hell is, but I do know that . . . [Supermax] would be pretty close to it."

73. As CBS reported, "The general public has never seen Supermax in operation. . . . Most prisoners spend up to 23 hours a day in their cell—every minute, every meal. The window in their cell is blocked so they can't see the mountains."

74. In one interview with CBS, a former inmate at Supermax said, "Your connections to the outside, your family—through phone calls, visits—all those are pretty much stopped at the ADX. There's no comparison." Supermax, he said, "breaks your mind."

75. In another interview, an employee at Supermax told CBS that Supermax was dangerously understaffed, with more than a quarter of staff jobs unfilled.

76. When CBS asked a follow up, the employee said, "I can't really say anything about that. That's internal security and I can't talk about that. I can tell you that we are very short staffed."

77. Multiple inmates at Supermax are placed under special administrative measures, *see* 28 C.F.R. 501.3, which further limits inmates' contact with the outside world,

78. For example, an inmate at Supermax might be placed under special administrative measures where a determination is made that "there is a substantial risk that a prisoner's communications or contacts with persons could result in death or serious bodily injury to persons."

79. These measures can include "housing the inmate in administrative detention and/or limiting certain privileges, including, but not limited to, correspondence, visiting, interviews with representatives of the news media, and use of the telephone."

80. During his confinement at Supermax, Hanssen was subject to special administrative measures.

81. Among other things, these measures limited his ability to communicate with others outside Supermax.

82. Hanssen died on June 5, 2023, while in BOP custody.

83. The same day, BOP released a statement: "On Monday, June 5, 2023, at approximately 6:55 am, inmate Robert Hanssen was found unresponsive at the United States Penitentiary (USP) Florence ADMAX in Florence, Colorado. Responding staff immediately initiated life-saving measures. Staff requested emergency medical services (EMS) and life-saving efforts continued. Mr. Hanssen was subsequently pronounced deceased by EMS personnel."

E. **CBS's FOIA Requests**

84. After Hanssen's death, CBS submitted at least seven requests pursuant to FOIA for agency records held by Defendants.

85. As of the date of this filing, Defendants have not produced any records responsive to these requests either to CBS directly or by posting records to Defendants' FOIA websites.

   a. **Request #1: FOIA-2023-01382**

86. On June 7, 2023, CBS submitted a FOIA request to DOJ's Office of Information Policy seeking "Any and all documents relating to the confinement conditions of Robert P. Hanssen (Inmate #48551-083) from the years 2002-2003, 2012, and 2022-2023." A true and correct copy of that document is attached as **Exhibit A** (the "June 7 DOJ Request").

87. On June 16, 2023, DOJ acknowledged it received the June 7 DOJ Request, denied CBS's request for expedited processing, and cited "unusual circumstances" extending DOJ's deadline to respond to the June 7 DOJ Request by 10 days pursuant to 5 U.S.C. § 552 (a)(6)(B)(i)-(iii) to July 24, 2023. A true and correct copy of that document is attached as **Exhibit B**.

88. On June 23, 2023, DOJ supplemented its acknowledgment, informing CBS that DOJ would "need to extend the time limit to respond to your request beyond the ten additional days provided by the statute." A true and correct copy of that document is attached as **Exhibit C**.

89. To date, DOJ has not made a determination as to whether it will comply with the June 7 DOJ Request by disclosing records directly to CBS nor produced any agency records responsive to that request.

   b. **Request #2: EOUSA-2023-002413**

90. On June 15, 2023, CBS submitted a FOIA request to DOJ's Executive Office of United States Attorneys seeking "the case file for a matter that was handled by the U.S. [A]ttorney in the Eastern District of Virginia. The case name and ID number are U.S. v Hanssen,

Robert Philip, USAO 2001R00936." A true and correct copy of that document is attached as **Exhibit D** (the "June 15 DOJ Request").

91. To date, DOJ has not made a determination as to whether it will comply with the June 15 DOJ Request by disclosing records directly to CBS nor produced any agency records responsive to that request.

    c. <u>**Request #3 (to Defendant FBI): 1595795-000**</u>

92. On June 6, 2023, CBS submitted a FOIA request to the FBI seeking "[a]ny and all audio and/or video recordings of or pertaining to Robert Philip Hanssen, a former FBI agent who was convicted of espionage." A true and correct copy of that document is attached as **Exhibit E** (the "June 6 FBI Request").

93. On June 23, 2023, the FBI denied CBS's expedited processing request for the June 6 FBI Request. A true and correct copy of that document is attached as **Exhibit F**.

94. On June 26, 2023, the FBI acknowledged it received the June 6 FBI Request. A true and correct copy of that document is attached as **Exhibit G**.

95. On July 18, 2023, the FBI issued a response to the June 6 FBI Request, informing CBS that "[r]ecords responsive to your request will be made available in the FBI's electronic FOIA Library (The Vault) on the FBI's public website." A true and correct copy of that document is attached as **Exhibit H**.

96. To date, the FBI has not made that disclosure nor has it made a determination as to whether it will comply with the June 6 FBI Request by disclosing records directly to CBS.

    d. <u>**Request #4 (to Defendant FBI): 1595811-000**</u>

97. On June 6, 2023, CBS submitted a FOIA request to FBI seeking "[a]ll FBI files on or pertaining to Robert Philip Hanssen, a former FBI agent who was convicted of espionage."

A true and correct copy of that document is attached as **Exhibit I** (the "Second June 6 FBI Request").

98.     On June 26, 2023, FBI issued a response to the Second June 6 FBI Request, informing CBS that "[r]elease of responsive records subject to the FOIPA will be posted to the FBI's electronic FOIA Library." A true and correct copy of that document is attached as **Exhibit J**.

99.     To date, the FBI has not made that disclosure nor has it made a determination as to whether it will comply with the Second June 6 FBI Request by disclosing records directly to CBS.

   e.   <u>Request #5 (to Defendant BOP): 2023-03653</u>

100.    On June 9, 2023, CBS submitted a FOIA request to BOP seeking the "Bureau of Prisons file for Robert Philip Hanssen, a deceased federal inmate, whose register number was 48551-083." A true and correct copy of that document is attached as **Exhibit K** (the "June 9 BOP Request").

101.    On June 12, 2023, BOP acknowledged it received the June 9 BOP Request, denied CBS's request for expedited processing, and cited "unusual circumstances," extending BOP's deadline to respond to the June 9 BOP Request by 10 days to July 26, 2023. A true and correct copy of that document is attached as **Exhibit L**.

102.    To date, BOP has not made a determination as to whether it will comply with the June 9 BOP Request by disclosing records directly to CBS nor produced any agency records responsive to that request.

f.  **Request #6 (to Defendants BOP/DOJ): 2023-03621**

On June 7, 2023, CBS submitted a FOIA request to BOP seeking "[a]ny and all audio recordings of the voice of Robert Philip Hanssen, a deceased federal inmate. This request should be read to include recorded phone calls (Truphone system) on which Mr. Hanssen was a party and any other audio recordings. It should also be read to include audio from any video of Mr. Hanssen that was recorded with sound." A true and correct copy of that document is attached as **Exhibit M** (the "June 7 BOP Request").

103.  On June 13, 2023, BOP issued a response to the June 7 BOP Request, denying that request in its entirety pursuant to 5 U.S.C. § 552(b)(6) & (b)(7)(C). BOP further represented that these exemptions were categorical in nature and therefore it was "not required to conduct a search for the requested records." A true and correct copy of that document is attached as **Exhibit N**.

104.  On June 28, 2023, CBS appealed that denial. A true and correct copy of that document is attached as **Exhibit O**.

105.  On June 28, 2023, DOJ on behalf of BOP acknowledged receipt of the June 7 BOP Appeal and assigned an appeal number of A-2023-01526. A true and correct copy of that document is attached as **Exhibit P**.

106.  On July 7, 2023, BOP denied expedited processing of the appeal from the denial of the June 7 BOP Request. A true and correct copy of that document is attached as **Exhibit Q**.

107.  To date, neither BOP nor DOJ has made a determination as to the June 7 BOP Appeal by disclosing records directly to CBS nor produced any agency records responsive to that request.

    **g.  Request #7 (to Defendant BOP): 2023-03827**

108. On June 22, 2023, CBS submitted a FOIA request to BOP seeking "[a]ny and all medical records for deceased federal inmate Robert Philip Hanssen. Any and all disciplinary records for deceased federal inmate Robert Philip Hanssen. Any and all sentencing records for deceased federal inmate Robert Philip Hanssen." A true and correct copy of that document is attached as **Exhibit R** (the "June 22 BOP Request").

109. On July 6, 2023, the BOP acknowledged it received the June 22 BOP Request, denied CBS's request for expedited processing, and cited "unusual circumstances," extending BOP's deadline to respond to the June 22 BOP Request by 10 days to August 4, 2023. A true and correct copy of that document is attached as **Exhibit S**.

110. To date, the BOP has not made an appeals determination as to the June 22 BOP Request by disclosing records directly to CBS nor produced any agency records responsive to that request.

## COUNT I – VIOLATION OF FOIA

Request #1 (to Defendant DOJ): FOIA-2023-01382

111. CBS realleges the allegations in the foregoing paragraphs as if fully set forth herein.

112. DOJ is an agency subject to FOIA, that in response to a FOIA request must release responsive records to a requester or provide a lawful reason for withholding any such records.

113. At least one or more of the responsive records are not exempt from disclosure under FOIA.

114. DOJ has failed to meet the statutory deadlines governing its response to the June 7 DOJ Request.

115. As a result, DOJ has constructively denied the June 7 DOJ Request, and CBS is deemed to have exhausted its administrative remedies as to such request.

116. As such, CBS is entitled to an order compelling DOJ promptly to produce records responsive to the June 7 DOJ Request.

## COUNT II – VIOLATION OF FOIA

Request #2 (to Defendant DOJ): EOUSA-2023-002413

117. CBS realleges the allegations in the foregoing paragraphs as if fully set forth herein.

118. DOJ is an agency subject to FOIA, that in response to a FOIA request must release responsive records to a requester or provide a lawful reason for withholding any such records.

119. At least one or more of the responsive records are not exempt from disclosure under FOIA.

120. DOJ has failed to meet the statutory deadlines governing its response to the June 15 DOJ Request.

121. As a result, DOJ has constructively denied the June 15 DOJ Request, and CBS is deemed to have exhausted its administrative remedies as to such request.

122. As such, CBS is entitled to an order compelling DOJ promptly to produce records responsive to the June 15 DOJ Request.

## COUNT III – VIOLATION OF FOIA

Request #3 (to Defendant FBI): 1595795-000

123. CBS realleges the allegations in the foregoing paragraphs as if fully set forth herein.

124. The FBI is an agency subject to FOIA, that in response to a FOIA request must release responsive records to a requester or provide a lawful reason for withholding any such records.

125. At least one or more of the responsive records are not exempt from disclosure under FOIA.

126. The FBI has failed to meet the statutory deadlines governing its response to the June 6 FBI Request.

127. As a result, the FBI has constructively denied the June 6 FBI Request, and CBS is deemed to have exhausted its administrative remedies as to such request.

128. As such, CBS is entitled to an order compelling the FBI promptly to produce records responsive to the June 6 FBI Request.

## COUNT IV – VIOLATION OF FOIA

Request #4 (to Defendant FBI): 1595811-000

129. CBS realleges the allegations in the foregoing paragraphs as if fully set forth herein.

130. The FBI is an agency subject to FOIA, that in response to a FOIA request must release responsive records to a requester or provide a lawful reason for withholding any such records.

131. At least one or more of the responsive records are not exempt from disclosure under FOIA.

132. The FBI has failed to meet the statutory deadlines governing its response to the Second June 6 FBI Request.

133. As a result, the FBI has constructively denied the Second June 6 FBI Request, and CBS is deemed to have exhausted its administrative remedies as to such request.

134. As such, CBS is entitled to an order compelling the FBI promptly to produce records responsive to the Second June 6 FBI Request.

## COUNT V – VIOLATION OF FOIA

Request #5 (to Defendant BOP): 2023-03653

135. CBS realleges the allegations in the foregoing paragraphs as if fully set forth herein.

136. BOP is an agency subject to FOIA, that in response to a FOIA request must release responsive records to a requester or provide a lawful reason for withholding any such records.

137. At least one or more of the responsive records are not exempt from disclosure under FOIA.

138. BOP has failed to meet the statutory deadlines governing its response to the June 9 BOP Request.

139. As a result, BOP has constructively denied the June 9 BOP Request, and CBS is deemed to have exhausted its administrative remedies as to such request.

140. As such, CBS is entitled to an order compelling the BOP promptly to produce records responsive to the Second June 9 BOP Request.

## COUNT VI – VIOLATION OF FOIA

Request #6 (to Defendants BOP/DOJ)): 2023-03621

141. CBS realleges the allegations in the foregoing paragraphs as if fully set forth herein.

142. BOP is an agency subject to FOIA, that in response to a FOIA request must release responsive records to a requester or provide a lawful reason for withholding any such records.

143. At least one or more of the responsive records are not exempt from disclosure under FOIA.

144. BOP and/or DOJ have failed to meet the statutory deadlines governing its response to CBS' appeal of the denial of the June 7 BOP Request.

145. As a result, BOP and/or DOJ have constructively denied the June 7 BOP Request, and CBS is deemed to have exhausted its administrative remedies as to such request.

146. As such, CBS is entitled to an order compelling the BOP and/or DOJ promptly to produce records responsive to the June 7 BOP Request.

### COUNT VII – VIOLATION OF FOIA

Request #7 (to Defendant BOP): 2023-03827

147. CBS realleges the allegations in the foregoing paragraphs as if fully set forth herein.

148. BOP is an agency subject to FOIA, that in response to a FOIA request must release responsive records to a requester or provide a lawful reason for withholding any such records.

149. At least one or more of the responsive records are not exempt from disclosure under FOIA.

150. BOP failed to meet the statutory deadlines governing its response to CBS' appeal of the denial of the June 22 BOP Request.

151. As a result, BOP has constructively denied the June 22 BOP Request, and CBS is deemed to have exhausted its administrative remedies as to such request.

152. As such, CBS is entitled to an order compelling the BOP promptly to produce records responsive to the June 22 BOP Request

**WHEREFORE,** CBS asks the Court to:

i. Order Defendants DOJ, FBI, and BOP to conduct a reasonable search for records responsive to each request and produce all non-exempt records directly to CBS within 20 days of that order;

ii. Award CBS's attorney fees and costs; and

iii. Grant CBS other further relief the Court deems appropriate.

DATED: August 9, 2023                                  Respectfully Submitted,

By: /s/ Matthew L. Schafer

Matthew L. Schafer
Paramount Global
1515 Broadway
New York, NY 10036
Phone: 212.846.3252
E-mail: Matthew.Schafer@Paramount.com

*Counsel for Plaintiff CBS Broadcasting Inc.*